JOHN B. WOOD *vs.* FRANCIS B. HAYES & another, Adminis-
trators.

A broker who has bought stock for another with money advanced by himself, and holds
it in his own name, may, so long as he has not been paid or tendered the amount of his
advances, pledge it as security for his own debt to a third person, without making him
self liable to an action by his employer.

APPEAL from the decision of commissioners upon the in-
solvent estate of Thomas J. Lobdell, deceased, of which the
defendants were administrators.

The material facts, as appearing by the report of an au-
ditor, upon which the case was submitted to the judgment
of the court, were as follows: Lobdell was a broker in Bos-
ton, and was employed by the plaintiff to buy stocks for him,
with his own money, and bought for the plaintiff a number of
shares of the Cheshire Railroad Corporation. On the 1st of
July 1853 the parties settled an account, and found a balance
due to Lobdell of $ 7,450, for which the plaintiff gave him a
promissory note, as security for payment of which Lobdell ac-
knowledged that he then held one hundred and forty nine of
these shares. Lobdell died in October 1853, and his admin-
istrators soon after called upon the plaintiff for a settlement,
who did not deny his indebtment, but asked for all the time
possible. It did not appear that the plaintiff ever demanded
his stock or offered to pay his note. At the time of Lobdell's
death, he had no shares of this stock standing in his own name,
and none in the plaintiff's; but owned · or held two or three
thousand such shares which he had pledged; and he at any time
during his life, and the defendants after his death, could have
procured for the plaintiff his shares or an equal number, if he
had demanded the same and paid the amount of his note.
Before Lobdell's death the shares had fallen in value, so that
those which he held for the plaintiff would not, if sold, have
produced enough to pay his note, and they afterwards fell still
more.

The plaintiff contended that Lobdell had no right to pledge the shares, and, having done so illegally, was responsible for their value at the times when they were assigned to him or purchased by him. The plaintiff admitted that if this claim could not be sustained, he was indebted to Lobdell's estate. The auditor was of opinion " that he has no right to charge the estate of Lobdell with the value of the shares at the time they were purchased. The mere fact that Lobdell pledged shares belonging to the plaintiff for his own debts does not make him responsible for the value of that stock at any particular time. He had a lien on them, because the plaintiff was constantly indebted to him for money lent on these shares, and the plaintiff had no right to demand an assignment of them without paying or tendering the amount for which they were held; and any change in the market value in the mean time could not be chargeable to Lobdell. This would be obviously true, if Lobdell had held the shares in his own name as security. Assuming that he had no legal right to pledge them, yet, as it appears that he during his life, and his administrators after his decease, had the power to replace the stocks; that the plaintiff never paid or offered to pay the amount due thereon, and never demanded the stock; and this act of Lobdell, if unlawful, was, as to the plaintiff, a wrong without an injury, for which he can claim no redress, because he has suffered no loss thereby."

*R. T. Paine, Jr.,* for the plaintiff. The pledging of the plaintiff's shares by Lobdell, unauthorized by the plaintiff, is a conversion for which an action on the case would lie. *Alsop* v. *Price,* 1 Doug. 168. *Allen* v. *Dykers,* 3 Hill, 593, and 7 Hill, 497. *Jarvis* v. *Rogers,* 15 Mass. 396, 408. *Whitaker* v. *Sumner,* 20 Pick. 405. Story on Bailments, § 324. No demand is necessary, because an actual conversion is proved. 1 Chit. Pl. (6th ed.) 180. *Tomkins* v. *Haile,* 3 Wend. 406. *Hunt* v. *Holton,* 13 Pick. 221. The fact that the stocks could have been replaced does not render the sale or pledging any the less a conversion. *Wilson* v. *Little,* 2 Comst. 450. A tender of the money borrowed by the plaintiff would have been fruitless, because

Lobdell had voluntarily put it out of his power to restore the pledge, and was therefore unnecessary. *Allen* v. *Dykers* and *Wilson* v. *Little,* above cited. Wherever any action, in form *ex delicto,* for injury to personalty would have lain against an intestate, indebitatus assumpsit can be maintained against his administrator, if any benefit has accrued from the tort to the estate of the deceased. And in such an action against the administrator of a pawnee who has tortiously pledged the pawn, the measure of damages is the value thereof at the time of the tort, or at the time of the delivery of it to the pawnee, if the defendant fails to show when the tort took place. *Sherrington's Case,* Sav. 40. *Hambly* v. *Trott,* Cowp. 373. *Utterson* v. *Vernon,* 3 T. R. 549. *Adair* v. *Shaw,* 1 Sch. & Lef. 264 *Jones* v. *Hoar,* 5 Pick. 287. *Cooper* v. *Crane,* 4 Halst. 177.

*C. F. Choate,* for the defendants. The facts do not in themselves, without a demand and refusal, prove a conversion of the plaintiff's stock by Lobdell. Moreover, since Lobdell was lawfully in possession of the stock, and had a lien upon it, the plaintiff could not maintain trover without tendering the amount due on the stock and demanding its return. *Fairbank* v. *Phelps,* 22 Pick. 535. *Picquet* v. *M'Kay,* 2 Blackf. 465. *Caldwell* v. *Cowan,* 9 Yerger, 262. If the facts are such as to enable the plaintiff to maintain trover, still he cannot waive the tort and maintain this claim (which is in contract) unless the goods converted were turned into money or money's worth, of which there is no proof. *Jones* v. *Hoar,* 5 Pick. 289. *Gilmore* v. *Wilbur,* 12 Pick. 124. *Stearns* v. *Dillingham,* 22 Verm. 627. *Allen* v. *Woodward,* 2 Foster, 544. If this action can be maintained at all, it must be on the ground that the original wrongdoer is dead, and in that case the only damages that can be recovered is the amount of benefit accrued to the estate. *Cravath* v. *Plympton,* 13 Mass. 453. *Jones* v. *Hoar,* 5 Pick. 287 & note. *Hambly* v. *Trott,* Cowp. 371. It appears from the auditor's report that no benefit was derived to the estate, and no detriment was done to the plaintiff by Lobdell's acts.

SHAW, C. J. The doctrine of trover does not apply. Lobdell advanced the money to buy the shares for account of Wood,

and held the shares in his own name. It stood on the footing of contract. The contract was strictly conditional, to deliver so many shares on payment of so much money. The money was never paid and the title to have performance never accrued. There was no claim for the balance. But as the balance was in favor of Lobdell's estate when he died, the result of this case is *Judgment for the defendants.*